Elliott v. Elliott's adm'r.

CASE 55—EQUITY—FEBRUARY 26, 1881.

# Elliott v. Elliott's adm'r.

### APPEAL FROM GRAVES CIRCUIT COURT.

1. Oral evidence is competent to prove that notes due at a specified time were, by agreement, not to bear interest after maturity.

2. The evidence of the alleged agreement is not sufficient to establish it.

W. W. TICE FOR APPELLANT.

1. Although the law implies a contract to pay interest upon a note after its maturity, the presumption may be rebutted by verbal testimony. (Butler v. Sudduth, 6 T. B. Mon., 542; Strader v. Lambeth, 7 *Ib.*, 589.)

2. The proof of the agreement is ample.

W. M. SMITH FOR APPELLEE.

1. It is not competent to prove by oral evidence that no interest was to be charged upon the notes in controversy. It contradicts the writing.

2. The evidence, if competent, does not prove such an agreement.

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

Appellant was sued upon two notes for the purchase price of land, and a lien sought to be enforced. One of the notes is as follows:

"On or before the first of March next, I promise to pay B. B. Elliott the sum of two hundred and eighty-four dollars and twenty cents, for value received, this 22d November, 1873."

The other note is in the same form, and the same date, but made payable on the first of March, 1875.

To this action appellant pleaded payment, except as to the interest, and as to that, he pleaded an agreement entered into at the time of the execution of the notes with B. B. Elliott, to the effect that no interest was to be charged. On the issue as to the agreement in regard to the payment of interest, there being no allegation of fraud or mistake, oral

evidence was heard, and the main question is as to the com-
petency of such evidence.

The rule that parol evidence is not admissible to contradict
or vary a written instrument evidencing an agreement is
subject to many exceptions, and many instances have been
declared within the rule which clearly do not belong there.
The rule properly applied was intended to reach cases where
the parties purport in the writing itself to set forth their
agreement, or where the undertaking is inferable from the
terms used in the writing.   It ought not to apply to mere
legal presumptions, which in effect add new terms to the
contract as expressed between the parties, and it has not
been so applied in this state.   It is held, for instance, that
one who signs a promissory note, the body of which denotes
that all who execute it do so as principals, may show by
parol that he signed as surety, and the other parties to the
note are principals.   In such a case the rule is encroached
upon more directly than in the case under consideration.
There the usual language in notes signed by more than
one person, "we promise," followed by signatures without
designation as to whether principals or sureties, would
seem to import that all were equally bound, and stood in
the same relation to the payee.   Here there is an entire want
of language to express, even by inference, an undertaking
to pay interest.   The undertaking is purely the offspring of
legal presumption arising, not from the language or terms
of the contract, but from the absence of language indicating
such an intention.   It has been held in this state, that while
an indorsement in blank of a note implies an undertaking on
the part of the indorser to pay in the event the maker does,
not, yet parol or extrinsic evidence is admissible to show
that the assignment was without recourse.   (Butler v. Sud--

duth, 6 T. B. Monroe, 543; Wharton on Evidence, sections 952 and 953; Parsons on Notes and Bills, volume 2, page 519.)

We are of the opinion that the evidence as to the agreement in regard to interest is competent.

The evidence, however, does not appear to clearly establish the existence of the agreement. The evidence principally relied upon to support the agreement is that of one witness, who states that "after the notes were executed, B. B. Elliott remarked that John thought he had charged him a large price for the land, and that he thought that the time upon which he let John have the land was quite a consideration; that he was to have his own time in which to pay for it, without interest." The notes were due in one and two years, and of course bore no interest until due; so that the term "without interest" may have applied to the time intervening before maturity. This evidence is rebutted by various statements of B. B. Elliott, tending to show that his understanding was that the notes bore interest. Under these circumstances, we do not feel authorized to disturb the judgment, and it is therefore affirmed.